*1292 OPINION.
Trammell:
The petitioners contend (1) that the fair market value on March 1, 1913, of the capital stock of the Central Boarding & Supply Co. was $275 per share; (2) that the value of the entire net assets of the corporation transferred to the partnership on dissolution was $78,763.88; (3) that M. S. Engleman’s share in such assets was of a value of $4,375.77; and (4) that F. J. Engleman’s share had a value of $38,506.78.
In support of the contention that the stock had a fair market value of $275 on March 1, 1913, the petitioners introduced evidence as to the amount of earnings of the corporation for the preceding *1293 five years and the amount of capital stock and assets both tangible and intangible during that period to show that the corporation had good will to the amount of $57,657 on March 1, 1913, which was not taken into consideration by the respondent in his determination of the value of the stock on that date. In addition, F. J. Engleman testified as to an unaccepted offer made by a third person in his presence to E. D. Crawley during 1912 to purchase for $250 per share the 150 shares of stock held by her in the corporation. He also testified that in view of the previous earnings of the corporation, the contracts it held on March 1, 1913, and the prospects for future earnings, the stock in his opinion had a value of $275 per share on that date.
It may well be, as contended by the respondent, that under the particular facts and circumstances, apart from F. J. Engleman the corporation did not have any good will; that personal qualifications, experience, ability and skill of an individual do not constitute good will as an item of property. Providence Mill Supply Co., 2 B. T. A. 791; Northwestern Steel & Iron Co., 6 B. T. A. 119. But here we are not so much concerned with the question of good will as an item of property. The question here is the value of the stock. All the evidence that has any bearing on that question should be considered. In the absence of sales the value of the assets may be resorted to. It makes no difference by what name an asset is called. Clearly the corporation had an asset in the form of the contract. It was capitalized at $5,000. It clearly had a value in excess of that amount. Considering the earnings and the value of the tangible assets, the corporation had some intangible assets in excess of $50,000. We have a record of earnings for several years prior to basic date and the testimony as to the prospects for the future. We also have an offer to purchase the stock at $250 a share which offer was declined. Considering all the evidence, we think that the stock had a value of $250 a share on March 1, 1913.
In March, 1920, a partnership was formed by the stockholders of the corporation with the same name as the corporation. This partnership continued the same business without any change, except the form of the organization, with the same assets without any interruption. Before the assets could be paid into the partnership, however, they became the property of the stockholders who formed the partnership. The organization of the partnership and the transfer of the Assets to it was contemporaneous with the dissolution of the corporation. It was the purpose to carry on the same business in partnership form instead of corporate form without interruption.
In view of all the facts and circumstances, the assets, both tangible and intangible, belonging to the corporation were transferred to the partnership. The contract with the railroad owned by the corpora *1294 tion did not lose its value merely because of the fact that in transferring it to the partnership it was included among assets which temporarily became the property of the persons who were stockholders, although they did not actually receive the assets themselves. The contract when the corporation was dissolved was of value. The question is, then, what was its value in March, 1920, when the corporation was dissolved and its assets distributed. Considering the earnings over the years from 1916 to March, 1920, it appears that 1916 was a year of abnormally high earnings. They constantly decreased from that time until 1920. Considering the earnings and the value of the tangible assets in connection with all the other facts, a value of at least $42,000 is arrived at. This value added to the net value of assets owned by the corporation as shown by the books on March 1, 1920, gives approximately $127,000 as the value of all assets, using the values of other assets as shown by the books. This value is substantially corroborated by the sales price of $453.33 a share paid by F. J. Engleman for 80 shares of the stock in July, 1919. At that value per share the assets would have had a value in-July, 1919, of approximately $135,000. But other factors than asset values may have entered into the stock transaction. The company had the prosperous years of 1916, 1917, and 1918. The year 1919 had not ended and the smaller earnings of the full year 1919 and the year 1920 had not been realized. In view of all the evidence we think that the value of all the assets should be determined by including the contract at a value of $42,000 in March, 1920.
Since we have found that the value of the net assets transferred by the corporation to the partnership was not correctly reflected on the books of the corporation, a reduction of $10,000 should be made in the amount of real estate and a reduction of $4,647.23 should be made in the amount of the equipment.
As an item of $1,317 representing unpaid Federal taxes was not taken into consideration at the time of the transfer, the amount of the net assets should be further reduced by this amount. The gain taxable to each of the petitioners is the difference between the March 1, 1913, value of the stock, which was greater than cost, and the value of the assets to which each was entitled by virtue of his stock ownership.

Judgment will be entered on 10 days' notice, v/nder Rule 50.

Considered by MoRRis, Murdock, and Siefkin.